■ FACULTY OF THE CITY UNIVERSITY OF NEW YORK LAW SCHOOL AT QUEENS COLLEGE et al., Respondents-Appellants, and HOMER LA RUE et al., Respondents, v JOSEPH S. MURPHY, as Chancellor of the City University of New York, Appellant-Respondent.—Order, Supreme Court, New York County (Edward Greenfield, J.), entered July 14, 1988, which granted the motion of plaintiffs-respondents-cross-appellants for a preliminary injunction to the extent of directing defendant-appellant-cross-respondent Joseph S. Murphy, Chancellor of the City University of New York, to transmit the tenure applications of plaintiffs-respondents Homer La Rue and Vanessa Merton to the Board of Trustees of the City University of New York for its consideration, and directing defendant to offer said plaintiffs continuation of their present, nontenured positions for a one-year period, and which granted defendant Chancellor's cross motion to dismiss the complaint to the extent of dismissing the claims of all plaintiffs other than Homer La Rue and Vanessa Merton, unanimously modified, on the law, to dismiss the claims of plaintiffs-respondents La Rue and Merton arising under the Federal and State civil rights laws, and otherwise affirmed, without costs.

Defendant-appellant, Chancellor of the City University of New York (CUNY), challenges the injunctive relief granted to two CUNY Law School professors whom he had refused to recommend to the CUNY Board of Trustees for reappointment with tenure. A cross appeal has been taken by members of the CUNY Law School faculty who were found by Supreme Court to lack standing in this law suit to contest the Chancellor's treatment of their two colleagues. The relevant facts, which are fully recited in Justice Greenfield's decision (140 Misc 2d 525 [Sup Ct, NY County 1988]), support the award of preliminary injunctive relief to respondents La Rue and Merton.

The issue here is whether the Chancellor of CUNY is vested with authority to deny tenure to candidates who have passed each stage of the approved tenure review process or whether that authority rests with the Board of Trustees. We note that we are not called upon to consider the substantive merits of respondents' tenure applications, but only to determine whether the Chancellor's actions were in accordance with CUNY's rules and procedures governing tenured appoint-

ments *(Gertler v Goodgold,* 107 AD2d 481, 486-487 [1st Dept 1985], *affd* 66 NY2d 946). The CUNY Law School bylaws and internal governance plan set forth the standards applicable to candidates for tenured appointments to the Law School faculty and the prescribed process for tenure review. Both La Rue and Merton were found to have met the teaching and scholarship criteria by the Law School Tenure Review Committee, the Law School Personnel and Budget Committee, and the Dean of the Law School. Although the Joint Review Committee, comprising faculty from both the Law School and Queens College, also found that La Rue and Merton had met the criteria established for the Law School, there was some concern that the Law School's standards were less stringent than the tenure requirements established for the Queens College faculty. However, the bylaws applicable to the university as a whole state that the provisions of a governance plan for a particular school shall, in the event of conflict, prevail.

Pursuant to the Law School governance plan, the determination as to whether a candidate for tenure has met the teaching and scholarship standards rests with the Law School Personnel and Budget Committee and the Tenure Review Committee. Although the Joint Review Committee, President of Queens College, and Chancellor of CUNY are all given authority to review applications which are favorably recommended by the Law School, we find no authority indicating that veto power has been vested in any of the subsequent reviewers. Rather, as Supreme Court found, the participants at each of the seven levels of tenure review are expected to perform a different function and to examine the application from a different perspective. It is the Board of Trustees which, when there has been favorable action by the Personnel and Budget Committee and the Law School faculty, receives all of the information, negative and affirmative, and makes the ultimate decision.

Under New York State Education Law § 6206 (7), the CUNY Board of Trustees has the exclusive, nondelegable power to grant tenure. Appellant's contention that while the Board of Trustees has exclusive authority to grant tenure, the Chancellor is vested with authority to deny tenure by refusing to forward applications which have been favorably recommended to the Board of Trustees, finds no support in the case law. In *Matter of Rodriguez-Abad v Kibee* (71 AD2d 588 [1st Dept 1979]), the reappointment and promotion of two assistant professors who had been favorably recommended by the Select Faculty Committee were rejected by the Chancellor, who did

not transmit the Committee's findings to the Board of Higher Education, predecessor of the CUNY Board of Trustees, for final determination. This court, relying on *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.* (40 NY2d 774, 777 [1976]), found that "there was an impermissible delegation of duties" to the Chancellor which was void as against public policy *(supra,* at 589). The matter was remanded to the Board of Higher Education for its review.

We do, however, agree with appellant's contention that respondents have not met their burden of pleading facts sufficient to show violation of title VII of the Civil Rights Act of 1964 and section 296 of the New York Executive Law. The mere fact that respondents La Rue, who is black, and Merton, who is a women, were rejected while three white male candidates were granted tenure is insufficient. Although allegation of race- or sex-based animus is not required to make out a prima facie case for violation of title VII *(Texas Dept. of Community Affairs v Burdine,* 450 US 248, 253-254 [1981]; *McDonnell Douglas Corp. v Green,* 411 US 792, 802 [1973]; *Lieberman v Gant,* 630 F2d 60, 63 [2d Cir 1980] [a showing of facts giving rise to the inference of discrimination is sufficient as an initial matter]), the facts alleged must, if left unexplained, suggest a strong likelihood that the action complained of was "bottomed on impermissible considerations." *(Furnco Constr. Corp. v Waters,* 438 US 567, 580 [1977].) Here, however, respondent La Rue acknowledges that the Law School, in accordance with its mission, will probably seek out other minority faculty. Neither Merton, La Rue, nor any other of the respondents has supplied the factual elements necessary to make out a prima facie case under title VII.

We have considered the arguments raised in the cross appeal and find them to be without merit. Concur—Murphy, P. J., Sullivan, Ross, Rosenberger and Wallach, JJ.